UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ROGER BOWLING

    Plaintiff,

v.

NATHAN SPOHN, UNKNOWN JAMES, UNKNOWN MONROE, in their individual and official capacities.

    Defendants.

No.

Hon.

_____/

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Roger Bowling, by and through his attorneys, Oliver Law Group, P.C. and for his Complaint and Jury Demand alleges:

## PARTIES

1. Plaintiff Roger Bowling is a person incarcerated by the Michigan Department of Corrections ("MDOC"). At all times relevant to the allegations in this Complaint, Mr. Bowling was incarcerated at the Carson City Correctional Facility ("DRF").

2. Defendant Nathan Spohn was, at all times relevant to the allegations in this complaint, an employee for the MDOC working at DRF.

3. Defendant Unknown James was, at all times relevant to the allegations in this complaint, an employee for the MDOC working at DRF.

1

4. Defendant Unknown Monroe was, at all times relevant to the allegations in this complaint, an employee for the MDOC working at DRF.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Mr. Bowling's claims pursuant to 28 U.S.C. § 1331 as his claims arise under the Constitution of the United States and 42 U.S.C. § 1983.

6. No Defendant is sued in their official capacity for monetary relief and therefore, the Eleventh Amendment does not present a bar to this Court's jurisdiction. *See generally Ex Parte Young*, 209 U.S. 123 (1908).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the majority of the events relevant to this Complaint occurred at DRF which is situated in the Western District of Michigan.

## FACTUAL ALLEGATIONS

8. Mr. Bowling was qualified as a "legal writer" pursuant to a Court ordered MDOC program designed to ensure access to the courts.

9. As a result of being a legal writer, Mr. Bowling was less than popular with corrections staff because he routinely assisted other incarcerated persons in preparing *pro se* legal filings.

10. Mr. Bowling began experiencing retaliatory harassment because of his role in assisting other inmates with their *pro se* legal filings.

11. For example, Mr. Bowling has had his legal materials taken during cell searches despite the possession of those materials being permitted by MDOC policy and further protected by the First and Fourteenth Amendments. **Exhibit A, P.D. 04.07.112, p. 4**.

12. Mr. Bowling has also been denied necessary medical treatment and been given medically inappropriate work assignments.

13. On August 13, 2021, these issues came to a head.

14. At approximately 5:15 AM, Defendant Spohn entered Mr. Bowling's cell.

15. Outside of Mr. Bowling's cell, hung a blue door tag indicating that he was medically determined to be hard of hearing.

16. Defendant Spohn began yelling at Mr. Bowling.

17. Mr. Bowling did not initially understand what was being said.

18. Defendant Spohn then began screaming, "YOU CAN FUCKING HEAR ME, YOU CAN FUCKING HEAR ME."

19. Defendant Spohn then entered Mr. Bowling's cell and – while Mr. Bowling was reaching for his itinerary to present – struck him in the mouth with his metal flashlight.

20. Defendant Spohn provided no warning and the incident occurred in a matter of seconds.

21. Defendant Spohn then left Mr. Bowling's cell.

22. Mr. Bowling suffered a broken tooth along with the significant pain and bleeding associated with having a tooth forcibly broken in his mouth, exposing the underlying nerve.

23. Mr. Bowling's cellmate, Dennis Parrish, was in the cell at the time and witnessed the entire incident.

24. Dennis Parrish was later told not to file a grievance on the matter by a corrections officer, Unknown Fiddler.

25. Mr. Bowling then reported the incident to several officers at the officer's station, including Defendant James.

26. The officers at the station refused to make a report of the incident, including Defendant James who had witnessed it, and further refused to let Mr. Bowling obtain medical attention despite him bleeding from the mouth with a broken tooth.

27. Within approximately 30 minutes, Defendant Spohn wrenched open Mr. Bowling's door and slapped a Step I grievance sheet down in front of Mr. Bowling.

28. On the grievance was a note with Defendant Spohn's name on it.

29. Defendant Spohn was again screaming at Mr. Bowling, only this time it was an unintelligible mix of rage at earlier grievances filed by Mr. Bowling, daring

Mr. Bowling to file a grievance on this incident, and expressly threatening to issue him a misconduct to prevent him from being able to file a grievance.

30. Defendant Spohn did in fact file a misconduct against Mr. Bowling, which was later dismissed.

31. To this date, Mr. Bowling still has not had his teeth repaired from Defendant Spohn's conduct.

**COUNT I: 42 U.S.C. § 1983 – Eighth Amendment Excessive Force**

32. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

33. The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment on prisoners.

34. The Eighth Amendment also imposes an affirmative duty on corrections officers to prevent applications of excessive force by their colleagues.

35. Defendant Spohn violated Mr. Bowling's Eighth Amendment rights by striking him in the mouth, without provocation, and breaking his tooth.

36. There was no penological justification for this conduct.

37. Defendant James violated Mr. Bowling's Eighth Amendment rights by failing to intervene once Defendant Spohn began screaming and menacing Mr. Bowling and it was clear that he had violence on the mind.

38. Defendants James and Monroe are also responsible for the violation of Mr. Bowling's rights by attempting to help cover up the incident by refusing to report it.

### COUNT III: 42 U.S.C. § 1983 – Eighth Amendment – Deliberate Indifference to Serious Medical Needs

39. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

40. The Eight Amendment to the United States Constitution also prohibits prison staff from ignoring the serious medical needs of incarcerated persons.

41. Defendants James and Monroe violated Mr. Bowling's Eighth Amendment rights by refusing to let him see medical despite the clearly visible injuries he had.

42. Defendants James and Monroe had no legitimate penological justification for refusing to let Mr. Bowling go to healthcare.

### COUNT II: 42 U.S.C. § 1983 – First Amendment Retaliation

43. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

44. The First Amendment to the United States Constitution prohibits retaliation against prisoners for engaging in constitutionally protected conduct.

6

45. While Defendant Spohn did not specifically mention Mr. Bowling's work assisting other prisoners with their *pro se* filings, there is no other rational justification for his conduct.

46. Mr. Bowling did not present any type of threat nor was he resisting or refusing to comply.

47. Additionally, Defendant Spohn did scream about Mr. Bowling's other grievances when he was screaming at him for the second time on August 13, 2021.

48. Defendant Spohn's attack on Mr. Bowling, the screaming, and slapping a Step I grievance down on his desk all would lead a person of reasonable firmness to stop filing grievances and working as a legal writer.

49. Mr. Bowling *did* stop assisting other inmates with their *pro se* legal filings due to the incident.

WHEREFORE, Plaintiff respectfully requests that this Court adjudge and declare that Defendants violated his rights as set forth above and award him:

a. Nominal, compensatory, and punitive damages;

b. An injunction requiring the Michigan Department of Corrections to replace Mr. Bowling's typewriter with the same model he had before this incident;

c. An injunction requiring additional training for MDOC employees who interact with hearing impaired inmates regarding how to accommodate that disability; and

d. Any other relief this Court deems just and proper.

## Jury Demand

Plaintiff hereby requests a trial by jury.

Respectfully submitted,

Dated: May 10, 2024

*/s/ Paul Matouka*
Paul Matouka (P84874)
OLIVER BELL GROUP
50 W. Big Beaver Rd.
Suite 200
Troy, MI 48084
T: (248) 327-6556
E: notifications@oliverlawgroup.com