UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER BOWLING #947415,

    Plaintiff,

v.

NATHAN SPOHN, et al.,

    Defendants.

_____/

Hon. Robert J. Jonker

Case No. 1:24-cv-490

**REPORT AND RECOMMENDATION**

This matter is before me on Defendants' Motion for Summary Judgment (ECF No. 36), which is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motion be **GRANTED IN PART AND DENIED IN PART** .

**I. Background**

Plaintiff Roger Bowling, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility, filed this action pursuant to 42 U.S.C. § 1983 against MDOC Corrections Officers (CO) Nathen Spohn, Dakota James, and Thomas Monroe based on events that occurred on August 13, 2021, while Plaintiff was incarcerated at the Carson City Correctional Facility (DRF). Bowling alleges that Defendants Spohn and James violated the Eighth Amendment when Defendant Spohn struck him in the mouth with a metal flashlight, and Defendant James failed to intervene; that Defendants James and Monroe violated the Eighth Amendment by refusing to let him go to health care for his injuries; and that Defendant Spohn retaliated against him in violation of the First Amendment by attacking him, screaming at him, and slapping a grievance down on Bowling's desk.

A.     The Complaint

Bowling alleges that he was a qualified "legal writer" in the MDOC's court-ordered legal writer program. He claims that, as a result of his activities assisting other prisoners in preparing pro se legal filings, prison staff engaged in retaliatory acts towards him, including confiscating his legal materials during cell searches, denying him necessary medical treatment, and assigning him medically-inappropriate prison jobs. (ECF No. 1 at PageID.2–3.)

Bowling alleges that the retaliation "came to a head" on August 13, 2021, at 5:15 a.m., when CO Spohn entered his cell and began yelling at Bowling. Bowling claims that, because of his hearing impairment, he did not initially understand what Spohn was saying, prompting Spohn to scream, "YOU CAN FUCKING HEAR ME, YOU CAN FUCKING HEAR ME." (*Id.* at PageID.3 (all capitals in original).) Bowling claims that Spohn entered his cell and, as Bowling was reaching for his itinerary to show Spohn, struck Bowling without warning in the mouth with his metal flashlight, resulting in a broken tooth and significant pain and bleeding associated with the broken tooth and exposed nerve. (*Id.* at PageID.3–4.) Bowling alleges that his cellmate, Dennis Parrish, was in the cell at the time and witnessed the entire incident and was later warned by a non-party officer not to file a grievance. (*Id.* at PageID.4.)

Bowling claims he reported the incident to several officers at the officer's station, including Defendant James, but they refused to make a report and refused to allow him to obtain medical attention despite the bleeding in his mouth from the broken tooth. (*Id.*) Bowling claims that, within 30 minutes, Defendant Spohn reappeared at his cell, slapped a Step I grievance form containing a note with Spohn's name on it in front of Bowling, and threatened to issue Bowling a misconduct if he filed a grievance. Bowling alleges that Spohn did in fact issue a misconduct, which was later dismissed. (*Id.* at PageID.4–5.)

2

**B.     Defendants' Version**

In support of their motion for summary judgment, Defendants submit their own declarations (ECF Nos. 37-2, 37-3, and 37-4), selected pages of the transcript of Bowling's deposition (ECF No. 37-5), the entire transcript of prisoner Parrish's deposition (ECF No. 37-6), and Bowling's medical and dental records (ECF No. 37-7).

DRF has several count times during the day. (ECF No. 37-2 at PageID.145.) One of the count times begins at 5:00 a.m. (*Id.* at PageID.136.) On August 13, 2021, Bowling was a Security Level II prisoner at DRF and was subject to the DRF Level II Housing Unit Rules. (*Id.* at PageID.136–37.) All prisoners are made aware of the Housing Unit Rules, which are posted in each unit. (*Id.* at PageID.137.) The Housing Unit Rules address prisoner counts and provide that, during count times, prisoners must be on their assigned bunks with their cell doors fully closed and may not have out-of-room movement until completion of the count without staff permission. (*Id.* at PageID.137, 145.) Thus, prisoners must remain in their cells until the count has cleared, even if staff has already verified that they are in their cells. (*Id.* at PageID.137.) Each cell is equipped with a light indicating count time, which turns off once count has cleared. (*Id.*)

On August 13, 2021, during the 5:00 a.m. count time in 800 Unit, Bowling left his cell without permission before the count had cleared and while the light was still illuminated, apparently to use the restroom. Bowling was instructed to returned to his cell until count cleared. Bowling followed the instruction and returned to his cell. However, a few minutes later, before count had cleared and the light went off, Bowling left his cell again without permission. (*Id.*; ECF No. 37-3 at Page 37-3 at PageID.152–53.) CO Spohn again instructed Bowling to return to his cell, but Bowling did not acknowledge the instruction. Spohn therefore shined a light at Bowling in order to get his attention, but Bowling ignored the instruction and proceeded to the restroom. (ECF

3

No. 37-2 at PageID.137.) Bowling admits that he left his cell twice during the 5:00 a.m. count time. (ECF No. 37-5 at PageID.171.)

Based on Bowling's rule violation, the officers decided to issue Bowling a misconduct for being out of place during count time. (ECF No. 37-2 at PageID.138, 149; ECF No. 37-3 at PageID.153.) When COs Spohn and James went to Bowling's cell to retrieve his ID card to verify his identity for the misconduct, Bowling failed to provide it as requested. CO Spohn then opened the cell door and "slowly and loudly" asked Bowling for his ID card. When Bowling failed to provide it, CO Spohn took Bowling's cell door card, which included his photo and MDOC number, to use in conjunction with the 800 Unit Count Board to verify Bowling's identity. (ECF No. 72 at PageID.138; ECF No. 37-3 at PageID.153.) COs Spohn and James both state that Spohn did not strike Bowling with a flashlight or use any other force on him. (ECF No. 37-2 at PageID.138; ECF No. 37-3 at PageID.153.) In addition, COs James and Monroe both deny that Bowling approached them with a bleeding mouth, stated that he had been assaulted, or requested medical care on August 13, 2021. (ECF No. 37-3 at PageID.153; ECF No. 37-4 at PageID.153.)

CO James issued Bowling a misconduct ticket for being out of place during the count on August 13, 2021, at 5:13 a.m. (ECF No. 37-2 at PageID.149.) Later that day, when non-Defendant Sgt. Palmer went to Bowling's cell to review the misconduct with him, Bowling did not want to participate. Although Sgt. Palmer called Bowling by name and Bowling looked at him, Bowling turned away when Sgt. Palmer spoke to him. Sgt. Palmer attempted to engage Bowling once more by calling his name, but Bowling turned away. (*Id.* at PageID.150.)

Defendants deposed prisoner Parrish, Bowling's former cellmate, who Bowling claims witnessed the entire incident. (ECF No. 1 at PageID.4.) Parrish testified that Bowling "plays" as if he cannot hear officers speaking or does not understand what they are doing, which is what

4

occurred in their cell on the date in question. (ECF No. 37-6 at PageID.184.) Parrish also testified that "there was no assault at all, whatsoever, on either me or on - - Bowling," and confirmed that "[n]o officer physically assaulted Bowling." (*Id.*) Regarding the tooth, Parrish said that Bowling was "the one who took the tooth out" and told Parrish that "he was filing for an assault." (*Id.* at PageID.185.) Parrish also testified that Bowling's allegation that another CO told Parrish not to file a grievance about the matter was "not true" because he never tried to file a grievance. (*Id.*)

Defendants also point to Plaintiff's medical records, which show that a nurse saw Bowling on August 14, 2021, at the request of custody staff after Bowling reported that his tooth had been knocked out in an altercation the previous morning. (ECF No. 37-7 at PageID.190.) The nurse found "no marking or discoloration on [Bowling's] face and no bruising . . . indicative of being involved in an altercation." (*Id.*) She also found no indication of active bleeding. (*Id.*) The nurse noted that Bowling had brought "a molar in a plastic bag" that was "in very poor condition" with "some black on it." (*Id.*) The nurse reported that Bowling was "missing numerous molars" and that because of his "poor dentation," she could not tell whether the tooth in the bag was the tooth that he claimed fell out. (*Id.*) Bowling admitted in his deposition that he is missing numerous teeth because they were dead and fell out or were pulled out. (ECF No. 37-5 at PageID.173–74.)

On August 16, 2021, Bowling was seen by dental surgeon Shary Henderson. Dr. Henderson noted that teeth numbered 30 and 31 were missing and that tooth number 32 had "gross decay to the pulp and only a root remains." (*Id.* at PageID.193.) Dr. Henderson extracted the root of tooth number 32 without issue. (*Id.*)

        **C.**    **Bowling's Evidence**

Bowling attaches several exhibits to his response. First, he submits a document titled "Relevant Facts," dated June 20, 2022, which is essentially a sworn declaration pursuant to 28

5

U.S.C. § 28 U.S.C. § 1746. This statement fairly tracks Bowling's complaint allegations and sets forth post-incident details. For example, Bowling states that he was called to healthcare the following day, August 14, 2021, where his injury was photographed, and he was provided pain medication. (ECF No. 39-15 at PageID.296.) He further states that on August 16, 2021, the remaining root of the tooth that CO Spohn broke off below the gumline was surgically extracted. (*Id.*) Bowling states that he and Parris gave statements in connection with an MDOC Internal Affairs investigation of the incident and that he has written verified statements by Parrish. (*Id.* at PageID.297.)

Bowling submits three declarations from Parrish dated August 30, 2021, two of which describe the events in question on the morning of August 13, 2021, including circumstances consistent with Bowling's allegation that Spohn assaulted him. (ECF No. 39-11 at PageID.279.)

Bowling also submits a declaration from prisoner Myron Glenn dated June 10, 2025, which recounts interactions with prisoner Parrish in November 2021, while Glenn was incarcerated at DRF. Glenn states that he was familiar with both Bowling and Glenn during his time at DRF and interacted with Parrish daily while they both waited in the medication line. Glenn states that on or about November 10, 2021, he asked Parrish about a scratch on his face, to which Parrish responded that he and Bowling had an altercation, and Bowling pulled him off his bunk, causing him to hurt his face when he landed on the ground. Glenn states that Parrish indicated that he got even with Bowling by having him sent to segregation and that he planned to ruin Bowling's lawsuit against CO Spohn and the other officers. Glenn states that he told Bowling about this conversation in April 2025, when he saw Bowling at Macomb Correctional Facility. (ECF No. 39-2.) Consistent with Glenn's declaration, Bowling submits what appears to be a page from a misconduct hearing report finding Bowling guilty of a November 8, 2021, assault on Parrish at DRF. (ECF No. 39-17.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

### A. Preliminary Matters

Before turning to the merits of Defendants' motion, I address various arguments Bowling raises in his response that are unrelated to the existing evidentiary record.

#### 1. Litigation Impediments

Bowling argues that the Court should deny Defendants' motion because his efforts to develop and litigate his case have been impeded by MDOC rules, regulations, and restrictions limiting his access to the law library; he has been denied requested discovery; and his former counsel failed to return the case file to Bowling. (ECF No. 39 at PageID.208–10.) By way of background, Bowling initiated this action through counsel. On April 16, 2025, following a hearing, I granted Bowling's counsel's motion to withdraw from the case and allowed Bowling 28 days to attempt to find new counsel. (ECF No. 27.) On April 22, 2025, I entered the parties' stipulated order regarding discovery, which noted that I had directed Bowling's former counsel to turn over

all discovery materials to Bowling and stipulated that counsel would send Bowling all discovery materials not subject to the February 24, 2025 Protective Order. As to the materials subject to the Protective Order, Defendants' counsel was to arrange for the MDOC to provide Bowling an opportunity to review them. (ECF No. 28.) On May 19, 2025, Bowling gave notice that he would be proceeding pro se but requested appointment of counsel to facilitate competition of discovery. (ECF No. 31.) On May 20, 2025, I denied Bowling's request for appointment of counsel but extended discovery to July 21, 2025. (ECF No. 32.)

On June 24, 2025, Bowling sent a request for production of documents to Defendants (ECF No. 39-2), but as he admits, he improperly sent the request to the Court. Bowling's logic—that Defendants would receive the request through ECF once the Clerk uploaded them into the system—was logical, but was not the proper procedure for serving discovery requests, so the Clerk returned them to Bowling. (ECF No. 33.) Bowling served his requests on Defendants on July 15, 2025. (ECF No. 39-3 at PageID.232.) Defendants responded on August 12, 2025, by objecting that because Bowling failed to serve his request at least 30 days before the discovery period expired, they were untimely and no response was required. (ECF No. 39-4.) Bowling attempted to resolve the issue with defense counsel but never received his requested discovery. (ECF Nos. 39-5, 39-6.) Regarding the case file, Bowling states that he sent a letter to his former counsel on July 25, 2025, asking that he return the file, but counsel failed to return it. (ECF No. 39-8.)

Contrary to Bowling's argument, these circumstances do not warrant denying or deferring a decision on Defendants' motion. As recognized in *Dykes v. Marshall*, No. 1:14-cv-1167, 2016 WL 11644971, at *2 (W.D. Mich. Nov. 1, 2016), "'risks and hazards' of *pro se* litigants include obtaining discovery without the assistance of counsel and, in the case of a prisoner, the limitations inherent in being a convicted criminal in the custody of the . . . [MDOC]." "And though courts

8

'give pro se litigants a certain amount of leeway in prosecuting their cases—for example, their pleadings are liberally construed—they are not excused from complying with the applicable Court Rules, and they are certainly expected to comply fully with the Court's orders.'" *Asamoah v. Amazon.com Servs., Inc.*, No. 2:21-cv-3, 2024 WL 691355, at *2 (S.D. Ohio Feb. 20, 2024) (quoting *O'Dell v. Kelly Servs., Inc.*, 334 F.R.D. 486, 491 (E.D. Mich. 2020)). Bowling's experience with limited law library time and related difficulties prosecuting his case are simply a common reality that all prisoner litigants must navigate. Further, if Bowling required more time for discovery or assistance with obtaining the case file from his prior counsel, his proper course would have been to file a motion seeking an extension of the discovery deadline or an order directing his counsel to turn over the file. In fact, because obtaining the case file from his former counsel does not constitute discovery, Bowling could have sought assistance from the Court to obtain those materials even after discovery closed.

### 2.    Screening Opinions from Other Cases

Bowling cites screening opinions from several other cases filed in this district, *Simmons v. Sutten*, No. 1:25-cv-513, 2025 WL 1587265 (W.D. Mich. June 5, 2025), *Fisher v. Rewerts*, No. 1:24-cv-917, 2025 WL 814814 (W.D. Mich. Mar. 14, 2025), and *Walker v. Hardenberg*, No 1:24-cv-726, 2025 WL 683626 (W.D. Mich. Mar. 4, 2025), alleging retaliation and excessive force against Defendants Spohn and James. (*Id.* at PageID.210.) He contends that the prisoners' allegations in these cases support his claims here. Bowling is mistaken. First, those decisions simply addressed whether the prisoners in each case alleged sufficient facts to allow the case to proceed. Those decisions are of no evidentiary value to Bowling's claims. Second, those cases involved different incidents that are not germane to the issues here. Finally, Bowling must present actual evidence to establish his claims.

9

### 3. Rule 56(d) Affidavit

Bowling submits an affidavit pursuant to Federal Rule of Civil Procedure 56(d) in support of his contention that the Court should defer ruling on his motion for summary judgment and allow him to conduct additional discovery.

Pursuant to Rule 56(d)(2), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." Rule 56(d) provides the non-moving party a mechanism to obtain sufficient discovery when faced with a motion for summary judgment. However, a party's submission of an affidavit or declaration pursuant to that rule is not an automatic guarantee of additional discovery. "'A party invoking [the] protections [of Rule 56(d)] must do so in good faith by affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him . . . to rebut the movant's showing of the absence of a genuine issue of fact.'" *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014) (quoting *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975)). The party seeking discovery must "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). In other words, the party offering the affidavit must, with "details" and "specificity," explain why additional discovery will enable the party to rebut the movant's showing of the absence of a genuine issue of material fact. *Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir. 1989).

Because I conclude below that Bowling presents sufficient evidence to survive Defendants' motion on his Eighth Amendment claims, but not his retaliation claim, I need not consider his affidavit with regard to his Eighth Amendment claims. As for the retaliation claim, Bowling fails to set forth with specificity why additional discovery will enable him to defeat the motion on the

retaliation claim. Bowling mentions his need to obtain "an inmate pass Spohn wrote his name on when he entered my cell the second time on Aug. 13, 2021[,]" (ECF No. 40 at PageID.307), but he fails to explain why that evidence would enable him to defeat summary judgment on the retaliation claim. Furthermore, for reasons set forth below, there are grounds unrelated to the inmate pass that warrant summary judgment. In his brief, Bowling also refers to video that he knows exists (ECF No. 39 at PageID.212), but in their reply, Defendants state that all existing video was previously shown to Bowling as required by the April 22, 2025 Order (ECF No. 42 at PageID.319). Given this representation, there is no reason to believe that further discovery will yield more video evidence.

In his brief and declaration, Bowling refers to an amended complaint and "instances of retaliation that occurred over the course of the continuing year." (ECF No. 39 at PageID.214; ECF No. 40 at PageID.308.) Contrary to Bowling's assertion, he has never moved for leave to file an amended complaint or submitted a proposed amended complaint. Therefore, his allegations pertaining to the alleged retaliation in this case are limited to those in his original complaint, which remains the operative pleading.

### 4. Request for Summary Judgment

Although Bowling did not file a motion for summary judgment, he presents an argument for summary judgment in his favor in his response. His argument fails because he does not meet the high threshold for summary judgment that applies to his claims.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could

11

find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Bowling bears the burden of persuasion on his claims, yet he fails to show that his evidence is so powerful that no reasonable jury would be free to disbelieve it. For example, Bowling fails to acknowledge Defendants' affidavits, which contradict Bowling's allegations and tend to show that they did not violate his constitutional rights. In addition, a reasonable jury could infer from Bowling's medical records that Spohn did not physically assault him. Finally, Parrish's deposition testimony alone renders summary judgment for Bowling improper.

 **B.**  **Defendants' Motion**

  **1.**  **Eighth Amendment Claims**

Defendants invoke the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007), to frame their summary judgment argument. The summary judgment evidence at issue in *Scott* was video from the dashboard camera of a police vehicle taken during a high-speed chase. Summarizing the video, the Court found it so indisputable on the nature of the chase that it compelled summary judgment: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

12

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 379–80.

As Defendants note, courts have extended *Scott*'s rule beyond the context of video evidence. *See Coble v. City of White House*, 634 F.3d 865, 868–69 (6th Cir. 2011) ("[C]ourts routinely look to Scott for guidance in determining whether the non-moving party's version of the events is so blatantly contradicted by objective evidence in the record that it fails to create a genuine issue of material fact for trial, even in the absence of a videotape."). Defendants cite, for example, *White v. Georgia*, 380 F. App'x 796 (11th Cir. 2010), in which the Eleventh Circuit affirmed a grant of summary judgment on the plaintiff's excessive force claim alleging that arresting officers shot her because the physician who examined the plaintiff after her arrest conclusively stated that her injuries were not caused by a gunshot. *Id.* at 798. They also cite *Cooper v. City of Rockford*, No. 06 C 50124, 2010 WL 3034181 (N.D. Ill. Aug. 3, 2010), an excessive force case involving use of lethal force, in which the court found it undisputed that the decedent was not running away from the defendant officer because the "autopsy report [was] clear that the bullet entered [the decedent] from the front chest area and never exited his body." *Id.* at *2 n.3.

Defendants build their *Scott* argument on the "multiple declarations, medical records, and non-party eyewitness testimony." (ECF No. 37 at PageID.124–25.) Because Defendants' declarations are not "objective evidence" for purposes of *Scott*, the issue is whether the medical evidence and Parrish's testimony, alone or together, blatantly contradicts Bowling's version of events and any other evidence in the record supporting that version.

Turning first to the medical evidence, I find that it is not of the same unequivocal quality as the autopsy report in *Cooper* or the examining physician's testimony in *White*. First, while the clinical encounter note from August 14, 2021 reports no visible signs of discoloration or bruising

13

on Bowling's face consistent with being in an altercation the previous day and no active bleeding, the nurse did not reach any definitive conclusion as to whether the tooth Bowling had with him came from the area of teeth numbers 30-32 to which he pointed. (ECF No. 37-7 at PageID.190.) In addition, the nurse examined Bowling more than 30 hours after the alleged assault occurred. (*Id.*) As for Dr. Henderson's note (*id.* at PageID.192–93), her observations and removal of the root of tooth number 32 appear consistent with Bowling's statement in his verified statement of facts that on August 16, 2021, Dr. Henderson extracted the root from the tooth that broke off at the gumline on August 13 when Spohn hit him with a flashlight. (ECF No. 39-15 at PageID.296.)

Parrish's deposition testimony, along with the medical records, might support a conclusion that no reasonable jury could believe Bowling's version, but Bowling has submitted Parrish's prior sworn statements that contradict his deposition testimony. (ECF 39-11 at PageID.275–80.) Defendants argue that these statements may not be considered for summary judgment purposes because they do not conform to 28 U.S.C. § 1746. Contrary to the statute, Parrish certified them under penalty of perjury to the best of his "knowledge, information and belief." Defendants cite *United States v. Ten Thousand Five Hundred Dollars ($10,500) in U.S. Currency*, No. 1:19-cv-1181, 2020 WL 1821835 (W.D. Tenn. Apr. 10, 2020), and *Jackson v. Heyns*, No. 1:13-CV-636, 2015 WL 5691168 (W.D. Mich. Sept. 28, 2015), for the proposition that a declarant who makes statements upon both personal knowledge and information and belief must differentiate between the two, which Parrish did not.

But Sixth Circuit law does not categorically require exclusion in these circumstances. In *Ondo v. City of Cleveland*, 795 F.3d 597 (6th Cir. 2015), the court held that "when affidavits based on knowledge and belief are submitted to support or oppose a motion for summary judgment, the district court has discretion to determine whether it can differentiate between knowledge and belief

14

for each averment in the affidavit." *Id.* at 605. The *Ondo* court further said that if the district court can distinguish statements made on personal knowledge from those based on information and belief, it "should excuse the affiant's stylistic error, and must admit the parts based solely upon personal knowledge, while striking the parts based upon belief." *Id.*; *see also Kyle v. Skipper*, No. 1:19-cv-353, 2020 WL 4194493, at *2 n.1 (W.D. Mich. June 30, 2020), *report and recommendation adopted*, 2020 WL 4192749 (W.D. Mich. July 21, 2020) (although the plaintiff's declaration was not properly sworn, the court would consider assertions based on the plaintiff's first-hand knowledge because "Plaintiff would certainly be capable of presenting such in admissible form at trial").

Reviewing Parrish's declarations, it is clear that his statements are based on his own recollection of what he saw and heard on the morning of August 13, 2021, when CO Spohn entered his cell and engaged with Bowling. Because Parrish's prior sworn statements are inconsistent with his deposition testimony, a genuine issue of material fact remains as to whether Spohn struck bowling in the face with a flashlight or other object and whether COs James and Morse denied Bowling's request to go to healthcare for his broken tooth. Thus, I recommend that the Court deny Defendants' motion on Bowling's Eighth Amendment claims.[1]

### 2. Retaliation Claim

To establish his retaliation claim against CO Spohn, Bowling must prove the following elements: (1) he engaged in protected conduct; (2) the defendant took an adverse action against

---

[1] Defendants do not address the Glenn declaration in their response, perhaps because it is limited to impeachment and therefore cannot create a genuine issue of fact to defeat a motion for summary judgment. *See SEC v. Levine*, 462 F. App'x 717, 719 (9th Cir. 2011) ("Impeachment evidence as to such deponent alone is not sufficient to create a genuine issue of material fact."); *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) ("[P]otential impeachment evidence . . . may not be used to create a genuine issue of material fact for trial.").

him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To satisfy the causal connection requirement, the plaintiff must show that the defendant's retaliatory motive was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019). Once the plaintiff has met this burden, if the defendant can show that he would have taken the same action in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Thaddeus–X*, 175 F.3d at 399; *see Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001).

Defendants contend that Bowling's retaliation claim against CO Spohn fails on all three elements. (ECF No. 37 at PageID.128–31.) As an initial matter, Bowling fails to respond to the specific arguments Defendants raise in support of their motion on this claim. Under these circumstances, Bowling's failure to address these arguments constitutes a waiver of any argument he may have that his retaliation claim has merit. *See AK v. Behavioral Health Sys., Inc.*, 382 F. Supp. 3d 772, 774 (M.D. Tenn. 2019) ("[W]hen a party fails to respond to an argument, that argument is generally deemed to be unopposed and the proposition conceded"); *Gomery v. Continental Cas. Co.*, No. 1:13-cv-947, 2014 WL 4209648, at *4 (W.D. Mich. Aug. 25, 2014) ("Plaintiffs' failure to respond to Defendant's business-enterprise-exclusion argument amounts to a waiver of their argument on the issue and a fatal omission in this case.") (citing, among others, *Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567 (6th Cir. 2013) (recognizing that the plaintiff had waived claim by failing to respond to or refute arguments made by the defendants in the district court)); *Murray v. Geithner*, 763 F. Supp. 2d 860, 871-72 (E.D. Mich. 2011) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has

16

held that the lack of response is grounds for the district court to assume opposition to the motion is waived." (citing *Humphrey v. U.S. Atty. General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008))). Regardless, I also address Defendants' specific arguments.

### a. Protected Conduct

Defendants contend that Bowling fails to show that he was engaged in protected conduct. First, they note that contrary to his complaint allegation that he was a "legal writer" and thus was "less than popular with corrections staff because he routinely assisted other incarcerated persons in preparing *pro se* legal filings" (ECF No. 1 at PageID.2), Bowling admitted in his deposition that at the time of the deposition, and in August 2021, he was not a legal writer for the MDOC (ECF No. 37-5 at PageID.167). Bowling also testified that prior to August 13, 2021, he had not filed any grievances against COs Spohn, James, or Monroe. (*Id.* at PageID.168–69.)

Next, Defendants contend that Bowling was not engaged in protected conduct on the morning of August 13, 2021, as he admits that he left his cell twice before count had cleared in violation of the DRF Housing Unit Rules. As the Sixth Circuit has observed, conduct that violates a legitimate prison regulation is not protected under the First Amendment—or any other amendment. *See Thaddeus-X*, 175 F.3d at 395; *see also Ford v.* Curtin, No. 1:12-cv-367, 2012 WL 2089847, at *6 (W.D. Mich. June 8, 2012) (concluding that "[r]efusing to obey a 'valid and reasonable' order from a prison corrections officer violates MDOC [policy] and is, therefore, not protected conduct"). Because Bowling fails to identify his protected conduct, his claim fails on this ground.

### b. Adverse Action

An action is adverse if it would deter a person of ordinary firmness from engaging in that conduct. *See Thaddeus-X*, 175 F.3d at 394. However, "some adverse actions are so *de minimis* that

17

they do not rise to the level of a constitutionally cognizable injury." *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018) (citing *Thaddeus-X*, 175 F.3d at 396). A sufficient injury is required because "it would certainly trivialize the First Amendment to hold that harassment for exercising one's constitutional rights was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) (internal quotation marks, brackets, and ellipsis omitted). The deterrent effect "need not be great in order to be actionable," *Thaddeus-X*, 175 F.3d at 397, and "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 398).

Bowling alleges that Spohn's physical assault, his screaming, and slapping a Step I grievance down on Bowling's desk constitute adverse actions. (ECF No. 1 at PageID.7.) While a physical assault would certainly qualify as an adverse action, Spohn's alleged screaming and slapping a grievance form down on a desk are de minimis acts that do not amount to adverse action.[2] It is well established that verbal harassment and minor threats do not "constitute an adverse action of constitutional significance within the meaning of a First Amendment retaliation claim." *Spearman v. Williams*, No. 22-1309, 2023 WL 7000971, at *4 (6th Cir. July 17, 2023) (citing *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003)); *see also Hamilton v. Bolton*, No. 2:24-cv-11, 2024 WL 4223963, at *5 (W.D. Mich. Sept. 18, 2024) ("The Sixth Circuit . . . has concluded that verbal harassment and minor threats do not constitute adverse action.").

---

[2] Bowling does not allege in his complaint that the misconduct for being out of place constitutes adverse action. Even had he made the allegation, the misconduct would not support a retaliation claim in light of Bowling's admission that he violated DRF rules by using the restroom during count without permission. Moreover, Spohn and the other COs had already made the decision to issue the misconduct when Spohn first went to Bowling's cell.

### c. Causal Connection

As for the one adverse action at issue, Bowling fails to present any admissible evidence to establish the requisite connection between his protected conduct and Spohn's alleged assault. Bowling admitted that, at the time of the incident, he had never interacted with Spohn and "didn't even know who Spohn was[.]" (ECF No. 37-5 at PageID.166.) Moreover, Bowling's complaint allegation that, "[w]hile Defendant Spohn did not specifically mention Mr. Bowling's work assisting other prisoners with their *pro se* filings, there is no other rational justification for his conduct" (ECF No. 1 at PageID.7), is nothing more than a speculative assertion that cannot support a retaliation claim. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). "To survive a summary judgment motion, a plaintiff must put forward more than speculations or intuitions." *Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007) (citing *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002)). Bowling's failure to put forth actual evidence of causation warrants dismissal of his retaliation claim.

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motion for summary judgment (ECF No. 36) as to Bowling's retaliation claim against CO Spohn but **deny** it as to Bowling's Eighth Amendment excessive force claim against CO Spohn and his Eighth Amendment denial of medical care claim against COs James and Monroe.

Dated: December 23, 2025                       /s/ Sally J. Berens
                                                                                                SALLY J. BERENS
                                                                                                U.S. Magistrate Judge

## NOTICE TO PARTIES

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).